## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ORIGINAL

FILED IN CLERK'S OFFICE

| | | |
|---|---|---|
| CAROL FAUBERT, | ) | |
| | ) | JUL 2 8 2003 |
| Plaintiff, | ) | |
| | ) | LUTHER ... |
| | ) | **By:** |
| | ) | Deputy Clerk |
| v. | ) | **CIVIL ACTION FILE** |
| | ) | **NO. 1 03 CV 2164** |
| ATLANTA FALCONS | ) | |
| FOOTBALL CLUB, LLC; | ) | |
| AMB GROUP, LLC; and | ) | |
| ARTHUR M. BLANK, | ) | **JEC** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Comes now the Plaintiff, CAROL FAUBERT, and submits her Complaint against the above-named Defendants and shows as follows:

### (Preliminary Statement)

1.

Plaintiff Carol Faubert worked for the Defendants as a Vice President for Human Resources. Plaintiff spoke out against the Defendants' sexual harassment and objectification of females. Based on Plaintiff's speaking out, Plaintiff was retaliated against and terminated. Further, Defendant Blank stated that he instead preferred a "guy" in Plaintiff's role so that he would be comfortable discussing "football stuff" with him. Defendant Blank terminated Plaintiff for no legitimate reason.

**(Jurisdiction & Venue)**

2.

Jurisdiction and venue are appropriate in the Northern District of Georgia as to all Defendants.

3.

Defendant AMB GROUP, LLC (hereinafter "AMB Group"), is a company with a principal place of business located at The Forum, 3290 Northside Parkway, N.W., Suite 600, Atlanta, Georgia 30327. Said Defendant may be served by serving its Registered Agent, David E. Homrich, at the aforesaid address. Jurisdiction and venue are proper as to this Defendant.

4.

Defendant ATLANTA FALCONS FOOTBALL CLUB, LLC (hereinafter "Atlanta Falcons"), is a company with a principal place of business located at 4400 Falcon Parkway, Flowery Branch, Georgia 30542. Said Defendant may be served by serving its Registered Agent, C.T. Corporation System, 1201 Peachtree Street, N.E., Atlanta, Georgia 30361. Jurisdiction and venue are proper as to this Defendant.

5.

Defendant ARTHUR M. BLANK is the owner and CEO of the respective corporate Defendants and can be served at The Forum, 3290 Northside Parkway,

N.W., Suite 600, Atlanta, Georgia 30327. Jurisdiction and venue are proper as to this Defendant.

## (Factual Allegations)

## Plaintiff Speaks out Against Discrimination and Harassment

6.

During the performance of her job, Plaintiff noticed that certain individuals and employees from both AMB Group and the Atlanta Falcons were treating women inappropriately. In particular, it was widely known and discussed among female employees of both offices that Defendant Arthur Blank's treatment of women was generally abusive.

7.

At various times, Plaintiff observed Ray Anderson, the Executive Vice President and Chief Administrative Officer of the Atlanta Falcons, instruct female employees to dress in professionally inappropriate, skimpy attire, to serve lunch to and act as waitresses for the football players, to dress up in costumes such as geisha girls and magician's assistants, to wear fishnet stockings, and to allow professional make-up artists to apply glitter and gawdy lipstick so as to make the female employees appear sexy and enticing to the football players.

3

8.

Forcing the female employees to dress in this inappropriate fashion served no other purpose than the prurient interests of the Defendants, and their male employees.

9.

Ray Anderson, Executive Vice President and Chief Administrative Officer of the Atlanta Falcons, customarily referred to female employees as "baby" and "sweetheart,"

10.

Ray Anderson frequently told stories around the office which were demeaning to women. One such story about a former client of his who was fired as head coach of another NFL team because of sexual harassment of the female employees ended with Ray Anderson stating: "Sexual harassment?  Big deal.  They should not have fired him for that reason."

11.

Some of the female employees who were asked to dress and change their appearance in the manner described in paragraph 7 above found the instructions to maintain such an appearance to be objectionable and they complained to Plaintiff.

12.

Plaintiff, acting upon the requests of several female employees, related their

4

complaints to Defendant Arthur Blank. Rather than responding to those complaints or enacting any policies or instructions to halt the sexual harassment of f female employees, Defendant Blank ignored Plaintiff's complaints, changed the subject and asked Plaintiff to spy on an acquaintance of his who served with Defendant Blank on the Board of Directors of a prominent Atlanta corporation.

13.

Defendant Blank informed Plaintiff that the Board of Directors to replace said individual because of his alleged indiscretions with women (he was a married man). Defendant Blank told Plaintiff that, although he personally had no problems with said individual or any man having "another woman on the side," he had a fiduciary responsibility to the Board of Directors of that corporation.

14.

Defendant Blank became angry when Plaintiff refused to participate in spying activities on said individual and report back to Defendant Blank.

15.

After Plaintiff received no response or remedial action by Defendant Blank about the sexual harassment and objectification of female employees, Plaintiff repeated the same complaints to Ray Anderson, to whom she told: "You can't use the women this way. You are pimping the women." Ray Anderson responded to

5

Plaintiff: "Arthur Blank wants this.  Drop it."

16.

On another occasion, Defendant Arthur Blank asked his assistant, Kim Mauldin, to find the pretty girls at the Falcons front office to escort Board members from the lobby to the Boardroom.  Some of the female employees complained and asked: "What are we?  Door whores?"  They were then instructed to do as they were told.

17.

Receiving no adequate response to her complaints to Defendant Arthur Blank or Ray Anderson, Plaintiff complained to Kim Shreckengost that the sexual harassment and objectification of female employees had to stop.  Kim Shreckengost responded: "You can't tell Arthur.  He will get mad at these women for complaining. I don't know what he will do to them."

18.

Plaintiff further related to Ms. Shreckengost the complaints of Susan Bass, VP Community Relations and Communications, of whom Arthur Blank asked: "How many players have hit on you?"  Defendant Blank continued to insist upon an answer, even though Susan Bass let him know that the question was demeaning.  Kim Shreckengost informed Plaintiff that Arthur Blank did not like Susan Bass and that

relating the complaint to him would cause him to dislike Ms. Bass further.

19.

Despite Plaintiff's complaints to Arthur Blank, Ray Anderson and Kim Shreckengost, the sexual harassment and objectification of female employees continued and it became apparent to Plaintiff that she was being retaliated against and discriminated against because of her complaints.

## Defendant Blank Discriminates Against Plaintiff Because of Her Weight

20.

After Plaintiff's complaints about sexual harassment and objectification of female employees produced no improvements in either area, Defendant Arthur Blank began complaining about the Plaintiff's weight, despite the fact that several male employees were also overweight and no complaints were made to or about them.

21.

On one occasion when Plaintiff asked Arthur Blank about her performance, he responded that she had done wonderful work the entire time she had been an employee, but also confirmed that he objected to Plaintiff's weight. Arthur Blank complained to Kim Shreckengost that Plaintiff's weight was "inconsistent with an athletic facility."

22.

Upon information and belief, Defendant Arthur Blank's personal problem with Plaintiff's weight was not applied to similarly situated men and was a pretext for illegal retaliation against the Plaintiff for speaking out against discrimination.

23.

On a further occasion when Plaintiff complained to Arthur Blank about Ray Anderson's inappropriate touching of female employees and also about Ray Anderson calling the female employees "baby," "sweetie" and "sugar," Arthur Blank responded: "What's wrong with that? I touch and kiss the women all the time myself."

**Defendant Blank Refuses to Hire Female Employees with Young Children**

24.

Upon information and belief, Defendant Arthur Blank purposely goes out of his way to discover the parental status of his female employees prior to hiring.

25.

For example, Defendant Blank instructed his subordinates to screen potential female applicants as to how many children they had and what were the ages of the children.

26.

8

Women who had such young children were routinely prevented from employment with the Defendants.

27.

On another occasion, Plaintiff spoke out in favor of two potential female vice-presidents for the Defendants. Arthur Blank and Ira Jackson were discussing whether or not two female employees of the Defendants should become vice-presidents. Plaintiff said affirmatively that they were doing all of the work of a vice-president and should be given the title of vice-president.

28.

Arthur Blank stated in response that, "I cannot have officers of mine running home to stay with little Max." This was in reference to a potential female Vice-President's child by the name of Max.

29.

Plaintiff responded, "Arthur, with all due respect, this is a family foundation. The efforts you have supported have been on behalf of children. How can you now say that a part-time mom cannot be a vice-president?" Arthur Blank became red-faced and angry and said that he didn't care. Defendant Blank said, "I hope you're not thinking of proposing top pro rata pay for a part-time effort."

30.

Arthur Blank then next said, "We are not covered by any of those laws. We don't have enough employees."

31.

On or about January 24, 2003, Kim Shreckengost met with Plaintiff and stated: "Arthur called me from San Diego where he will be attending the Super Bowl. He told me to fire you. When Ms. Shreckengost hesitated, Defendant Blank screamed 'fuck you, Kim,' and/or 'fuck' ten or more times, because I would not fire you since we had no grounds."

32.

Defendant Blank also complained that he was overpaying Kim Shreckengost, even though she was the lowest paid Executive Vice President and was the only female Executive Vice President. Acting upon the orders of Arthur Blank, Kim Shreckengost fired Plaintiff, whose official termination date was to be February 4, 2003.

## Plaintiff Speaks Out Against Defendants' Violation of Federal Law

33.

Plaintiff specifically opposed the unequal pay for women who worked for the Defendants.

34.

10

Plaintiff opposed the Defendants failure to pay overtime for certain of the Defendants' employees.

35.

Plaintiff wrote and collected job descriptions from employees at AMB and the Falcons for two reasons; namely 1) to determine whether the position qualifies for exempt status or if the position should be made hourly and 2) to properly evaluate their salary level at review time.

36.

Plaintiff was not allowed to change any AMB staff who clearly should have been changed to hourly. Plaintiff changed over 10 staff positions at the Falcons to exempt.

37.

Defendant Blank was particularly incensed that he would have to pay overtime and became angry with the Plaintiff.

38.

Upon information and belief, Defendant Arthur Blank's housekeepers for his mansions in both Atlanta and Hilton Head, SC are listed as exempt and receive no overtime according to Federal wage and hour laws. Defendant Arthur Blank and his wife, Stephanie Blank, became angrier yet when Plaintiff proposed changing his

11

housekeeping staff to hourly.

39.

Defendant Arthur Blank was very upset that Plaintiff included ADA language and questions in the job descriptions. Defendant Blank said, "[y]ou can't ask people how often they stand, reach, lift. You'll make me the laughing stock of the NFL. I don't care if it's the law."

## Plaintiff's Exemplary Work History

40.

From April 2002 until February 2003, Plaintiff worked for AMB Group as the Vice President for Human Resources. Plaintiff also worked for the Atlanta Falcons as a Vice President for Human Resources.

41.

During Plaintiff's employment, she received only one performance review in which her immediate supervisor, Kim Shreckengost, Executive Vice President of Operations of the AMB Group, told Plaintiff that her performance was "awesome."

42.

Plaintiff has over 25 years of substantive Human Resources experience.

43.

12

Plaintiff successfully implemented an INS policy for Defendant AMB Group that required all new employees, and current employees, to produce proof that they could legally work in the United States. Prior to Plaintiff's involvement, Defendant AMB were not in compliance with INS rules and regulations.

44.

Plaintiff initiated a complete benefits review of Long Term Disability, Short Term Disability, Life Insurance, Dental Insurance and Health insurance for the Defendants. The result of Plaintiff's effort was that it greatly enhanced benefits and generated a monetary savings currently projected to be over $300,000.00 per year.

45.

Plaintiff implemented an Employee Assistance Program to assist all personnel with personal problems and issues. This resulted in overwhelming positive feedback from all personnel from the Defendants.

46.

Plaintiff developed and implemented a comprehensive full day orientation program for new employees working for the Defendants. No orientation program was in place prior to Plaintiff's involvement.

47.

Plaintiff wrote the Intern Policy that presents a structured program with

appropriate guidelines including approval process for hiring college interns and the process for evaluating them so that their experience is meaningful.

48.

Plaintiff wrote and implemented new and more comprehensive non-discrimination and anti-harassment policies which clearly state the Defendants' positions in these areas.

49.

Plaintiff envisioned and initiated Falcons University for the football players and worked with Billy "Whiteshoes" Johnson and Lean Anding to develop the classes and select the speakers.

50.

Recently, the NFL gave the Falcons the award for Best Player Programs in the NFC.

51.

Plaintiff created and established a progressive discipline practice that ensured that employees were not blind sided in a termination.

52.

Plaintiff created and implemented the Separation Agreement process which defined the severance terms of terminated employees.

14

53.

Plaintiff developed formal personnel files for each of the Defendants' employees. Prior to Plaintiff's involvement, no formal personnel files were established.

54.

Plaintiff developed a Salary administration process and initiated salary bench marking so that employees would be given salary increases based not only on their performance, but on the market value of each position.

55.

Plaintiff developed review forms and a review process to ensure that all personnel benefit from comprehensive and inclusive reviews. Employees had the opportunity to discuss with their supervisors programs or classes to assist them in developing and growing in their positions and for advancement. No formal process was in place prior to Plaintiff's involvement.

56.

Plaintiff met with Arthur Blank's Executive VPs at the Falcons to establish metrics by which Arthur Blank could evaluate their performance and determine their bonuses.

57.

Plaintiff created formal employment application forms for the Defendants to be completed by applicants for vacant positions.

58.

Plaintiff developed and implemented all internal HR processes which were non-existent, such as Request for Leave, and New Hire Notification to those who need to know in order to have everything ready for the new arrival . Plaintiff also developed forms and processes for Change of Status (name change, position change, location change), Exit checklist to return keys, laptop, credit card etc., Exit Interview process and designed and implemented the 90-day probationary review form and system for all new hires.

59.

Plaintiff implemented comprehensive new payroll and human resources software and data bases at the Falcons that was also implemented at AMB.

60.

Plaintiff wrote and implemented a Family and Medical Leave policy that is required by law. Prior to Plaintiff's hire, no policy for FMLA was in place.

61.

Plaintiff wrote for the Defendants' supervisors "Keys to Effective and Appropriate Interviewing" so that their interviews would be lawful and more probing.

Arthur Blank clearly ignored this and continued to discriminate against women with small children.

62.

Plaintiff wrote and distributed to supervisors the document titled Supervisory Guidelines and Self-Evaluation Checklist to assist them with dealing with their direct reports professionally, directly and compassionately.

63.

Plaintiff established proper OSHA procedures at the Falcons. No one had advised Defendants of the laws prior to Plaintiff's arrival.

64.

Plaintiff reviewed three consultants' proposals relating to Long Term Incentive Plans, summarized them for Defendant Blank, interviewed new consultants and selected one to design the Plan. Defendant Blank complimented Plaintiff in writing on Plaintiff's memo concerning Long Term Incentive Plans.

65.

Plaintiff created a Service Award Program to recognize seniority

66.

Plaintiff wrote some Defendant Blank's internal communications and in particular, Defendant Blank complimented Plaintiff on her outstanding writing that

17

conveyed Arthur Blank's personal thoughts following the 9/11 terrorist attack.

## Count I

### (Title VII & Retaliation - Defendants Atlanta Falcons and AMB Group)

67.

Plaintiff respectfully reincorporates the allegations contained in the above paragraphs.

68.

At all relevant times, Defendants are and have been engaged in an industry affecting commerce and have employed 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and the Defendants are subject to the provisions of Title VII, 42 U.S.C. 2000(e).

69.

At all relevant times, Defendants were and are an "employer" as defined in Section 701(b) of Title VII.

70.

At all material times, the individual Defendant and the other individuals named herein were acting with the scope of their employment and were agents of the corporate Defendants, authorized and empowered to perform these acts as alleged herein during the regular course of their employment.

18

71.

Plaintiff and other females were discriminated against because of their sex through inappropriate comments made to them by their male supervisors as well as their objectification as sex objects by male supervisors. Defendants adopted this misconduct by failing and refusing to correct and prevent similar recurring misconduct.

72.

The above-described sexual discrimination and harassment made Plaintiff's job difficult to perform and placed stress, fear and humiliation on Plaintiff, which was not endured by her male co-workers

73.

Defendants reacted to Plaintiff's complaints of sexual discrimination and objectification by scrutinizing her work performance more closely than other employees, and, when finding nothing lacking in Plaintiff's performance, Defendants fabricated pretextual reasons for her termination.

74.

Defendants terminated Plaintiff because they unfairly targeted her alleged weight problem which amounts to an immutable characteristic of hers and of which the Defendants failed to similarly so apply to the male employees of the Defendants.

19

75.

Defendants retaliated against the Plaintiff for her speaking out on protected activity resulting in her termination for pretextual reasons.

76.

All jurisdictional prerequisites to the institution of Plaintiff's suit under Section 706 of Title VII have been fulfilled: Plaintiff filed her charges within 180 days of the discriminatory acts; Plaintiff was issued a right to sue from the EEOC; and Plaintiff now files this Complaint within 90 days of receipt of the right to sue.

77.

The actions herein above complained of were done because of the Plaintiff's gender and in retaliation for Plaintiff's opposition to unlawful employment practices.

78.

Defendants performed the above discriminatory acts willfully, wantonly, intentionally, and in reckless and callous disregard of Plaintiff's federally protected rights.

79.

As a direct result of Defendants' misconduct, Plaintiff has suffered compensatory damages in an amount to be proven at trial.

## Count II

## (Equal Pay Act & Retaliation)

### 80.

Plaintiff respectfully reincorporates the allegations contained in the above paragraphs.

### 81.

Defendants repeatedly and willfully violated, and are willfully violating, Section 6(d) of the FLSA by discriminating between employees on the basis of sex by paying wages to the Plaintiff and other female employees at a rate less than the rate at which they pay wages to male employees in the same establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

### 82.

Upon information and belief, Plaintiff was not paid the same as similarly situated males and was in fact paid less than comparable males while working for the Defendants.

### 83.

Prior to Plaintiff's termination, she spoke out on protected activity by protesting the Defendant's unfair employment practices.

21

84.

Some of Plaintiff's protected activities included complaining to Defendant about unequal pay for women and protesting the status of women doing Vice-President level work without compensation.

85.

Based upon Plaintiff speaking out on protected activity, the Defendant retaliated against and discharged the Plaintiff.

86.

The decision to terminate the Plaintiff was out of retaliation for her speaking out on protected activity.

87.

Plaintiff is entitled to the difference between her salary and the salary of male employees for the Defendants.

88.

Upon information and belief, Defendants paid Plaintiff substantially less than her male successor in yearly salary, bonus, pension benefits, fringe benefits and other types of compensation

89.

Plaintiff is further entitled to back pay and interest and an equal amount as

liquidated damages for the willful violation of the equal pay act.

## Count III

## (FLSA & Retaliation)

90.

Plaintiff respectfully reincorporates the allegations contained in the above paragraphs.

91.

Prior to Plaintiff's termination, she spoke out on protected activity protesting the Defendant's unfair employment practices.

92.

Some of Plaintiff's protected activities included complaining to Defendant about unequal pay for women, protesting the status of women doing Vice-President level work without compensation, and protesting the fact that certain employees were non-exempt for purposes of the FLSA, but were not being paid overtime.

93.

Based upon Plaintiff speaking out on protected activity, the Defendant retaliated against and discharged the Plaintiff.

94.

The decision to terminate the Plaintiff was out of retaliation for her speaking

out on protected activity.

## Count IV

### (Negligent Supervision, Retention & Hiring)

95.

Plaintiff respectfully reincorporates the allegations contained in the above paragraphs.

96.

Defendants had the duty to properly supervise, retain and hire their officers and employees so that the actions of said individuals did not cause harm to the Plaintiff and other female employees.

97.

Defendants breached their duty by failing to properly supervise, retain and hire their officers, agents and employees.

98.

Defendants breach of this duty to properly supervise, retain and hire their officers, agents and employees is the proximate cause of financial, physical and emotional injuries suffered by the Plaintiff.

99.

Because of the actions of Defendants, Plaintiff has been harmed in an amount

24

to be determined at trial.

## Count V

### (Intentional Infliction of Emotion Distress)

100.

Plaintiff respectfully reincorporates the allegations contained in the above paragraphs.

101.

As set out above, the conduct of these Defendants was so extreme and outrageous and so insulting as naturally to cause humiliation, embarrassment, and fear.

102.

As a direct and proximate result of these Defendants' actions and omissions, Plaintiff has been harmed both physically and mentally from the conduct described above, which has caused damage to the Plaintiff's happiness, well-being, and peace of mind. The amount of said harm is ascertainable by a jury of the Plaintiff's peers.

## Count VI

### (Tortious Interference With An Employment Relationship)

103.

Plaintiff respectfully reincorporates the allegations contained in the above

paragraphs.

104.

Plaintiff's employment relationship with Defendants constituted a right of enjoyment of private property and the Plaintiff's right of continuing employment under reasonable and appropriate circumstances.

105.

Some or all of these Defendants and their above-mentioned acts unlawfully interfered with Plaintiff's said right of enjoyment of her employment status.

106.

Such unlawful interference by these Defendants was the sole and proximate cause of the harm to the Plaintiff for which she was damaged thereby in an amount to be determined at trial.

## Count VII

### (Defamation)

107.

Plaintiff respectfully reincorporates the allegations contained in the above paragraphs.

108.

Based upon information and belief, Defendants and their agents refer to

Plaintiff as an extortionist or as exhibiting extortionist conduct.

109.

Plaintiff has not engaged in any extortionist conduct towards the Defendants and any such extortion allegation is false.

110.

Defendants have no evidence that Plaintiff is an extortionist or exhibits extortionist conduct.

111.

Defendants and their agents' remarks were directed to defame and impute the crime of extortion unto the Plaintiff.

112.

Defendants and their agents had no privilege or justification to make such remarks.

113.

Defendants and their agents made such remarks out of malice towards the Plaintiff because she dared oppose their illegal employment practices.

114.

Defendants and their agents actions amount to both slander and libel, or slander and libel, per se, in that the defamatory statements were both conveyed in spoken and

27

written form and are of special damage to the Plaintiff.

## Count VIII

### (Punitive Damages)

115.

Plaintiff respectfully reincorporates the allegations contained in the above paragraphs.

116.

All of Defendants' above-mentioned acts were willful, wanton, intentional, malicious and oppressive, and punitive damages in an amount to be determined by the enlightened conscience of a jury should be awarded to the Plaintiff to deter the Defendants from repeating such conduct.

WHEREFORE, as to Counts I through VIII of the within and foregoing Complaint, Plaintiff prays, separately with respect to each Count, for the following relief:

(a)     actual, consequential and liquidated damages, as may be proved;

(b)     general damages for pain, suffering and humiliation suffered by Plaintiff as a result of Defendants' actions;

(c)     punitive damages in an amount sufficient to properly penalize the Defendants for their misconduct and to deter Defendants from such wrongdoing in the future;

(d)     equitable relief including but not limited to reinstatement, and an injunction to prevent any further discrimination by the Defendants;

(e)     Plaintiff's attorneys' fees and expenses of litigation in reasonable amounts; and

(f)     such further and additional relief as the Court may deem just and proper.

## PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.

JONES, JENSEN & HARRIS

By: _____

TAYLOR W. JONES
Georgia Bar No. 403600

1900 One Georgia Center
600 W. Peachtree Street, N.W.
Atlanta, Georgia 30308
Phone: (404) 872-5300
Fax:   (404) 872-209

MILES, McGOFF & MOORE, L.L.C.

By: _____

LARRY A. PANKEY
Georgia Bar No. 560725

320 Dahlonega Street
Suite 200
Cumming, Georgia 30040
Phone: (770) 781-4100
Fax: (770) 781-9191

Attorneys for Plaintiff

30

%AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

__NORTHERN__ District of __GEORGIA__

CAROL FAUBERT

**SUMMONS IN A CIVIL CASE**

V.

ATLANTA FALCONS FOOTBALL CLUB, LLC,
AMB GROUP, LLC, and ARTHUR M. BLANK

CASE NUMBER:

**1 0 3 CV 2164**

TO: (Name and address of Defendant)

AMB GROUP, LLC
c/o David E. Homrich, Registered Agent
3290 Northside Parkway, N.W., Suite 600
Atlanta, Georgia 30327

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Taylor W. Jones, Esquire
JONES, JENSEN & HARRIS
1900 One Georgia Center
600 W. Peachtree Street, N.W.
Atlanta, Georgia 30308

an answer to the complaint which is herewith served upon you, within _____ **20** _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

LUTHER D. THOMAS

JUL -- 2003

CLERK                                    DATE

(By) DEPUTY CLERK

AO 440  (Rev. 10/93)  Summons in a Civil Action

## RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the third-party defendant.  Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☐ Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
　　　　　　　　　　Date　　　　　　　　Signature of Server

_____
Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

NORTHERN _____ District of _____ GEORGIA _____

CAROL FAUBERT

**SUMMONS IN A CIVIL CASE**

V.

ATLANTA FALCONS FOOTBALL CLUB, LLC,
AMB GROUP, LLC, and ARTHUR M. BLANK

CASE NUMBER:

**1** 03 CV 2164

TO: (Name and address of Defendant)

ATLANTA FALCONS FOOTBALL CLUB, LLC
c/o C.T. Corporation System, Registered Agent
1201 Peachtree Street, N.E.
Atlanta, Georgia 30361

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Taylor W. Jones, Esquire
JONES, JENSEN & HARRIS
1900 One Georgia Center
600 W. Peachtree Street, N.W.
Atlanta, Georgia 30308

an answer to the complaint which is herewith served upon you, within _____ *20* _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

LUTHER D. THOMAS

_____          JUL 2 8 2003
CLERK                                      _____
                                          DATE

_____
(BY) DEPUTY CLERK

AO 440 (Rev. 10/93) Summons in a Civil Action

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and complaint was made by me[1] | DATE | |
| NAME OF SERVER *(PRINT)* | TITLE | |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the third-party defendant.  Place where served: _____

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐  Returned unexecuted: _____

☐  Other (specify): _____

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |

| DECLARATION OF SERVER |
|---|

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
                        Date                              Signature of Server


                              _____
                                  Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

%.AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

NORTHERN _____ District of _____ GEORGIA

CAROL FAUBERT

**SUMMONS IN A CIVIL CASE**

V.

ATLANTA FALCONS FOOTBALL CLUB, LLC,
AMB GROUP, LLC, and ARTHUR M. BLANK

CASE NUMBER: **1 03 CV 2164**

TO: (Name and address of Defendant)

ARTHUR M. BLANK
The Forum
3290 Northside Parkway, N.W., Suite 600
Atlanta, Georgia 30327

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Taylor W. Jones, Esquire
JONES, JENSEN & HARRIS
1900 One Georgia Center
600 W. Peachtree Street, N.W.
Atlanta, Georgia 30308

an answer to the complaint which is herewith served upon you, within _____ **20** _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

CLERK

JUL 2 8 2003

(By) DEPUTY CLERK

DATE

AO 440 (Rev. 10/93) Summons in a Civil Action

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and complaint was made by me[1] | DATE | |
| NAME OF SERVER *(PRINT)* | TITLE | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the third-party defendant. Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☐ Other (specify): _____

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |

| DECLARATION OF SERVER |
|---|

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
            Date           Signature of Server

                      _____
                       Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.